FILED
2005 Sep-15  PM 01:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DOCK J. TUCKER, | ] |
| | ] |
|     Plaintiff, | ] |
| | ] |
|     vs. | ] CV04-CO-01047-W |
| | ] |
| MARTIN-MARIETTA AGGREGATES, | ] |
| | ] |
|     Defendant. | ] |

MEMORANDUM OF OPINION

I.      Introduction.

The Court has for consideration defendant Martin-Marietta Aggregates'
(hereinafter referred to as "Martin-Marietta") motion for summary judgment,
which was filed on July 1, 2005.  (Doc. 21.)  Plaintiff Dock J. Tucker has sued
Martin-Marietta under both Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"), alleging that
he was discriminated against because of his race in terms of pay, promotions,
disparate treatment, and termination.  (Doc. 1.)  The issues raised in
Defendant's motion for summary judgment have been briefed by both parties
and are now ripe for decision.  Upon full consideration of the legal

arguments and evidence presented, Defendant's motion will be granted in all respects.

II.   Facts.[1]

Plaintiff Dock J. Tucker, an African-American male, was hired by defendant Martin-Marietta on December 5, 2002, to work as a Laborer at its gravel quarry in Vance, Alabama.  As a Laborer, the lowest ranking job in the quarry, Plaintiff's responsibilities included cleaning the quarry by spraying water on concrete pads under the plant and by removing loose rocks from under the conveyor belts, screens, and chutes.  (Doc. 21, Pl. Dep. at 84-85.) Under Martin-Marietta's standard wage schedule, a beginning Laborer's rate of pay was $9.05 per hour.  (Doc. 21, Pl. Dep. at 86; Knizner Affidavit.)

Defendant has a policy which requires hourly employees at the quarry to undergo a 90-day training period, during which time Martin-Marietta undertakes performance and pay evaluations at the completion of 30, 60, and 90 days of employment.  (Doc. 21, Knizner Affidavit.)  During this time,

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

an employee may not be given a performance and pay evaluation if he has missed a substantial number of workdays or if he did not perform his regular duties.  *Id.*  On January 8, 2003, Plaintiff received his 30-day evaluation, which rated his performance as "competent."  (Doc. 21 Pl. Dep. at 96-97; Exhibit 9 to Pl. Dep.)  Based upon the 30-day evaluation, Plaintiff received a fifteen-cent per hour raise.  *Id.* at 97-98.

On January 30, 2003, Mr. Tucker injured his lower back on the job, but he was released by his physician to work with restrictions on the following day.  (Doc. 21, Pl. Dep. at 98-99, 186, 252; Exhibits 20, 22 to Pl. Dep.) Defendant tried to provide Mr. Tucker with job duties that were within his restrictions, and on February 3, 2003, he was assigned to "watch the plant run" by sitting in a pickup truck and monitoring the equipment to ensure that rocks did not fall into it and cause damage.  (Doc. 21, Pl. Dep. at 244-47, 252; Knizner Affidavit.)  Plaintiff claims that he left this position after two hours because his back was hurting and his doctor told him that lying on his back could be detrimental if he were not able to get up.  (Doc. 24, p. 2.) Plaintiff was then absent from work for the next six days, and he worked on a restricted-duty basis for another six days.  He was released to full duty on

February 18, 2003.  (Doc. 21, Pl. Dep. at 186-87, 200, 255; Knizner Affidavit.)

Mr. Tucker was not given a 60-day pay or performance evaluation because he

had missed six days of work and had been unable to perform his regular

duties.  (Doc. 21, Knizner Affidavit.)  Plaintiff alleges that the real reason for

the lack of a 60-day evaluation was because of his race and the fact that he

is married to a white female.  (Doc. 24, p. 3.)

Plaintiff's supervisor, Rich Knizner, completed his 90-day evaluation on

March 3, 2003, at which time Mr. Tucker's performance was rated as

"unsatisfactory" in terms of safety.  (Doc. 21, Pl. Dep. at 101-02; Exhibit 10

to Pl. Dep.)  During the period leading up to the evaluation, Mr. Knizner

noted that Plaintiff had injured himself and had missed two safety meetings.

*Id*.  As a result of the performance evaluation, Mr. Knizner did not give

Plaintiff a pay increase at that time.  (Doc. 21, Knizner Affidavit.)   In

response, Plaintiff commented, "I apologize for the attendance and safety

problems... and I will promise I will give two hundred percent effort

concerning my job...."  (Doc. 21, Pl. Dep. at 102-05; Exhibit 10 to Pl. Dep.)

At the time of his 90-day evaluation, Plaintiff asked Mr. Knizner about

the possibility of working as a Loader Operator at the quarry.  (Doc. 21, Pl.

Dep. at 120-21, 218.)  However, another employee had been hired as a Loader Operator on February 26, 2003, and no one was hired as, or promoted into a Loader Operator job during the rest of Plaintiff's employment.  (Doc. 21, Knizner Affidavit.)  At some point after the 90-day evaluation, Mr. Tucker expressed an interest in working as a Plant Operator, but no one was hired as or promoted into such a position after the quarry promoted another employee to the job of Plant Operator on February 12, 2003.  *Id.*

During the following thirty days of Plaintiff's employment, his performance improved so much that Mr. Knizner completed a 120-day evaluation on Mr. Tucker, even though Company policy did not require it.  (Doc. 21, Knizner Affidavit.)  In light of Plaintiff's performance, Mr. Knizner awarded him a raise of thirty-five cents per hour, bringing his pay up to the level that it would have been had he completed the regular 90-day training period.  (Doc. 21, Pl. Dep. at 115-18, 123; Knizner Affidavit.)

Due to slow gravel sales at the Vance quarry, in May 2003, Mr. Knizner discussed ways of cutting costs with the Division Director of Human Resources and the District Production Manager.  (Doc. 21, Knizner Affidavit.)  The first cost-cutting measure was to decrease the length of the night shift

from twelve to eight hours.  (Doc. 21,  Knizner Affidavit; Pl. Dep. at 125-26, 294, 299.)  When additional cutbacks became necessary, Mr. Knizner decided to shut down the night shift entirely and implement a reduction in work force of the employees at the quarry.  (Doc. 21,  Knizner Affidavit).

In determining which employees would be discharged, Mr. Knizner primarily considered seniority, but he decided to retain one employee, Randy Couch, with less seniority than Plaintiff because of his significant experience and skill level.  (Doc. 21,  Knizner Affidavit.)  Mr. Couch had worked at the Vance quarry for four years as a contract driller prior to being hired by Martin-Marietta.  *Id.*  Another employee, Jon McMinn, was also retained, despite the fact that he was hired on the same day as Mr. Tucker. *Id.*  Mr. Knizner contends that this decision was made because Mr. McMinn had been successfully cross-trained and promoted to Plant Operator, a job requiring more skill than a Laborer.  *Id.*  Plaintiff's letter of termination was dated July 7, 2003, and the other two employees received their termination letters on July 8, 2003.  (Doc. 25, Exhibit 1.)  Since the reduction in work force in 2003, none of the three employees have been replaced, and the quarry continues to operate without a night shift.  *Id.*

On June 30, 2003, Plaintiff filed a charge of discrimination with the EEOC, alleging that he was denied a 60-day evaluation, pay raises, promotions, that he was paid less than similarly-situated white employees, and that he was forced to work while injured.  (Doc. 21,  Pl. Dep. at 175-83; Exhibit 18 to Pl. Dep.)   At some point, Plaintiff also contends that he reported racial discrimination to Calvin Mayes at Martin-Marietta's Ethics Hotline. (Doc. 21, Pl. Dep. at 283-85.)  Plaintiff filed his second EEOC charge on July 7, 2003, alleging that Martin-Marietta discharged him in retaliation for filing his first EEOC charge.  (Doc. 21, Pl. Dep. at 261-62; Exhibit 24 to Pl. Dep.)  However, Mr. Tucker stated in the second EEOC charge that "[m]y employer was not notified of the charge having been filed on the date that I was discharged."  (Doc. 21, Pl. Dep. at 261-62; Exhibit 24 to Pl. Dep.)  Plaintiff subsequently filed this lawsuit against Martin-Marietta on May 20, 2004, asserting race-based discrimination claims under Title VII and § 1981. (Doc. 1.)

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

A.    Race Discrimination.

A plaintiff may employ direct, circumstantial, or statistical evidence to prove intentional discrimination.  *Standard v. ABEL Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Mr. Tucker has offered no direct evidence and thus must rely on circumstantial evidence in his effort to prove his case. Title VII claims based upon circumstantial evidence are reviewed by the Court by applying the three-step burden shifting analysis set out in the United States Supreme Court cases of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The analysis for claims arising under § 1981 mirrors the analysis for Title VII.  *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).  Under this analysis, the initial burden lies with the plaintiff to establish "a *prima facie* case of racial discrimination."

*McDonnell Douglas,* 411 U.S. at 802.  Once the plaintiff has met the *prima facie* case requirement, the defendant must "articulate some legitimate, non-discriminatory reason for the [adverse employment action]." *Id.*  This burden is "exceedingly light . . . .  At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir. 2004) (quoting *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)).  Finally, the burden returns to the plaintiff to prove by a preponderance of the evidence that the defendant's reasons were simply pretext for discrimination.  *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

The initial burden of establishing a *prima facie* case for Plaintiff's claims of race-based discrimination requires the plaintiff to show: (1) that he is a member of a protected class; (2) that he was qualified to perform his job; (3) that he was subjected to adverse employment action; and (4) the

employer treated similarly situated employees outside of the protected class more favorably. *See Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (11th Cir. 2003) (citing *McDonnell Douglas,* 411 U.S. at 802).

      1.    Denial of Pay.

Plaintiff alleges that he was denied pay raises at the time of his 60- and 90-day anniversaries of employment because of his race. (Doc. 21, Pl. Dep. at 177-78, 180.) To prevail on such a claim, Plaintiff must establish a *prima facie* case under the four-step analysis set out in the *Knight* and *McDonnell Douglas* cases above. *Knight,* 330 F.3d at 1316; *McDonnell Douglas,* 411 U.S. at 802. Defendant alleges that Plaintiff is unable to establish a *prima facie* case of discrimination for two reasons. First, Defendant asserts that the raises were of *de minimus* value and, therefore, cannot rise to the level of adverse employment action. (Doc. 22, p. 22.) Martin-Marietta argues that the total amount of pay lost by Mr. Tucker was $140, $10 less than the $150 filing fee that the plaintiff paid when he instituted this action. The Eleventh Circuit has held that "an evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action under Title VII." *Gillis v. Georgia Dept. of Corrections,* 400 F.3d 883, 888 (11th Cir. 2005). A

loss of $140, therefore, would not be *de minimus* and would constitute adverse employment action.

Defendant also asserts that Plaintiff cannot establish a *prima facie* case on his denial of a pay raise claim for his 60-day evaluation because he was not qualified for such a raise.  In accordance with company policy, Martin-Marietta did not perform a 60-day evaluation of Mr. Tucker because it claims that he was absent from work too many days within that 30-day period. Plaintiff argues that two white employees were given raises during their training periods despite being unable to perform their normal job duties. (Doc. 21, Pl. Dep. at 178, 211-12.)  However, Defendant has produced an affidavit from Plaintiff's supervisor stating that one of the two employees did not miss any significant amount of work during his 90-day training period, due to injury or any other reason.  (Doc. 22, p. 24.)  The other employee did experience an on-the-job injury during his training period, but, like Mr. Tucker, he did not receive either a performance evaluation or pay raise on his 90-day anniversary.  *Id*.

In order for another employee to be considered a valid comparator for the purposes of establishing a *prima facie* case of discrimination, the

employees must be "similarly situated in all aspects." *Holifield v. Reno,* 115 F.3d 1555,1563 (11th Cir. 1997).  "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted).  It is unlikely that either of the other employees at the quarry mentioned by the Plaintiff would be a valid comparator.  Unlike Plaintiff, one of them did not miss any significant amount of work during his 90-day evaluation period, and the other was treated the same as Mr. Tucker.  For these reasons, Plaintiff has failed to establish a *prima facie* case of discrimination because he cannot show that Martin-Marietta treated similarly situated employees outside of the protected class more favorably than it treated Plaintiff.

As evidence of pretext, Plaintiff has merely pointed to the fact that another employee made more per hour than he did at the time of discharge. This fact alone is not enough to defeat a motion for summary judgment.  It does not constitute "'significant probative' evidence" on the issue [of pretext] to avoid summary judgment."  *Mayfield*, 101 F.3d at 1376. Moreover, Defendant has rebutted Plaintiff's assertion by pointing out that

the other employee holds a different, higher-paying job than Plaintiff.  (Doc. 26, p. 10.)  Therefore, summary judgment is due to be granted with respect to Plaintiff's claim of discrimination based upon a denial of an increase in pay.

   2. Disparate Working Conditions.

  Mr. Tucker claims that he was forced to work while injured because of his race.  (Doc. 1, p. 3.)  He alleges that he was treated differently than a similarly situated white employee when both were injured on the job.  *Id.* To establish a claim of discrimination based upon disparate working conditions, Plaintiff must establish a *prima facie* case of discrimination under the four-part framework of *Knight* and *McDonnell Douglas.  Knight,* 330 F.3d at 1316; *McDonnell Douglas,* 411 U.S. at 802.

  Plaintiff testified at his deposition that he was unable to do the work that he was instructed to perform, while the other employee was given work that he could perform and did not miss work as a result.  (Doc. 21, Pl. Dep. at 134-38; 179-80; 183-84.)  However, Plaintiff also testified that the only occasion on which he was required to work was for two hours on February 3, 2003, during which time he was only required to "lay in the truck and watch

the plant while it ran." (Doc. 21, Pl. Dep. at 243-47.) Requiring Plaintiff to work those two hours, within the injury-related restrictions assigned by the physician, does not amount to a "serious and material change" in the terms and conditions of Plaintiff's employment necessary to establish an adverse employment action. Plaintiff has not produced any evidence contradicting Martin-Marietta's claim that it gave Mr. Tucker work that was within the physician's restrictions.

For these same reasons, Plaintiff has not provided the Court with a valid comparator for the purposes of establishing his *prima facie* case of discrimination. Under the *McDonnell Douglas* framework, a plaintiff must show that the employer treated similarly situated employees outside of the protected class more favorably. *See Knight,* 330 F.3d at 1316. Since Martin-Marietta provided Mr. Tucker with work that was within his restrictions, he cannot argue that another employee was treated more favorably. Just like his coworker, Mr. Tucker was provided an opportunity to perform work at the quarry that was within his restrictions. Because Plaintiff cannot establish either a *prima facie* case of discrimination or pretext, Defendant is entitled to summary judgment on Plaintiff's claims relating to his working conditions.

B.    Race-based Discharge Claim.

In his Complaint, Mr. Tucker alleges that the defendant discriminated against him based upon his race when he was discharged from the quarry. (Doc. 1, p. 3.)  Martin-Marietta defends by arguing that Mr. Tucker cannot establish a *prima facie* case of race discrimination because he cannot show that he was qualified for an available job at the time of the reduction in the work force.  (Doc. 22, p. 18.)  Also, Defendant claims that  Plaintiff cannot identify any evidence that would create an inference of discrimination in the decision to discharge the plaintiff as part of the reduction.  (Doc. 22, p. 19.)

To establish a *prima facie* case of discrimination in a case involving a reduction in work force, a plaintiff must: (1) prove that he is a member of a protected class and was adversely affected by the employer's decision; (2) prove that he was qualified for his own position or another position that he could have assumed at the time of discharge; and (3) produce sufficient evidence for a fact finder to conclude that the employer intentionally discriminated against him in reaching its decision.  *See Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1331 (11th Cir. 1998) (citing *Benson v. Tocco,*

*Inc.*, 113 F.3d 1203, 1208 (11th Cir. 1997)); *Jameson v. Arrow Company*, 75 F.3d 1528, 1532 (11th Cir. 1996).

Defendant argues that Mr. Tucker cannot establish a *prima facie* case of discrimination because he cannot show that he was qualified for an available job at the time of his discharge.  (Doc. 22, p. 18.)  An employer's decision to reduce its work force is an exercise of business judgment, and summary judgment is appropriate if the plaintiff cannot establish that he was qualified for positions that were available at the time of the reduction.  *See Bibby v. Drummond Co., Inc.*, 818 F. Supp. 325, 328 (N.D. Ala. 1993).  Plaintiff's job was eliminated when Defendant decided to reduce its workforce at the quarry.  When an employer entirely eliminates a position for nondiscriminatory reasons, for the plaintiff to prevail he "must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990).  Defendant asserts that the only job that plaintiff was qualified to perform was that of a Laborer, and no such job existed at the quarry after the reduction.  Plaintiff has not produced any

evidence that shows that he was qualified to perform any job other than that of a Laborer.

Plaintiff has also failed to produce sufficient evidence that Martin-Marietta discriminated against him when it made the decision to lay off three of its workers.  Both of the other individuals who were discharged are white, and Plaintiff has admitted that no one at the quarry ever said anything to suggest that race played any kind of role in his discharge.  (Doc. 21, Pl. Dep. at 149).  Therefore, Plaintiff has not established a *prima facie* case of race discrimination with respect to his claims based upon his discharge from the quarry.

Even if this Court were to assume, however, that Plaintiff was qualified for available positions and has produced sufficient evidence that Martin-Marietta intentionally discriminated against him, Plaintiff has not produced any evidence that the proffered explanation for the retention of the two white employees was mere pretext.  Defendant has explained that the decision to discharge Mr. Tucker, along with two other employees, was reached due to poor business conditions.  (Doc. 22, p. 19.)  Two discharged employees had less seniority than Plaintiff; however, two employees with

either lesser or equal seniority than Mr. Tucker were retained.  Defendant asserts that one was retained because he had worked at the quarry as a contract driller for four years prior to his employment with Martin-Marietta, and the other was not discharged because he had previously been promoted to Plant Operator due to his greater skill level and performance evaluations. (Doc. 22, p. 20.)

Plaintiff argues that these explanations are pretextual merely because he can show that a less senior person was retained when Plaintiff was discharged.  (Doc. 24, p. 16.)  Plaintiff points to the fact that the Defendant misrepresented the amount of experience one of the retained employees had at the time of the reduction.  However, the fact remains undisputed that Mr. Couch did, in fact, have four years of drilling experience at the quarry prior to being hired by Martin-Marietta.  In addition, Plaintiff argues that Defendant demonstrated its discriminatory motives when it notified Mr. Tucker that he would be discharged before the other two employees were given their letters of termination.  Plaintiff surmises that the decision to terminate two white employees was made just so that the reduction in work

force would "look fair." (Doc. 24, p. 17.)  He offers no other evidence to show discriminatory intent.

"Plaintiff bears the burden of proving that the employer intentionally discriminated against him because of his race." *Cooper*, 390 F.3d at 723.  A plaintiff "must present '*significant probative*' evidence on the issue [of pretext] to avoid summary judgment." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (emphasis added).  "Conclusory allegations of discrimination without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Id.* (quoting *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443–44 (11th Cir. 1996)).   A defendant can articulate a legitimate, nondiscriminatory reason for a plaintiff's discharge by showing that a drop in business necessitated a reduction in work force.  *Standard*, 161 F.3d at 1331.  The Eleventh Circuit has explained that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns,*

106 F.3d 1519, 1543 (11th Cir. 1997).  Because Plaintiff has not offered sufficient evidence from which a reasonable jury could find that Defendant discriminated against him because of his race, Defendant is entitled to summary judgment on Plaintiff's discharge claim under both Title VII and § 1981.

C.    Failure to Promote Claims.

Plaintiff also claims that he was denied promotions to the positions of Loader Operator and Plant Operator because of his race.  (Doc. 1, p. 3; Pl. Dep. pp. 218, 223-24.)  Defendant argues that Mr. Tucker cannot establish a *prima facie* case for either of these claims because no one was promoted to such positions.  (Doc. 22, p. 20.)

To establish a *prima facie* case for a failure to promote claim under Title VII and § 1981, a plaintiff must show that: (1) he is a member of a protected class; (2) that he was qualified for and applied for a promotion that was available at that time; (3) that he was rejected; and (4) that the employer selected someone outside of the plaintiff's class who was equally or less qualified.  *See Denney v. City of Albany*, 247 F.3d 1172, 1183 (2001)

(quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1539 n. 11 (11th Cir. 1997)); *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000).

Martin-Marietta argues that Plaintiff cannot make out a *prima facie* case for either of the positions because no such promotions ever occurred. (Doc. 22, p. 20.) Plaintiff stated in his deposition that he told his supervisor at the time of his 90-day evaluation that he was interested in becoming a Loader Operator, but there is no evidence that a Loader Operator position became available during the rest of Plaintiff's tenure at the quarry. Mr. Tucker also stated that in or around March 2003 he expressed an interest in the position of Plant Operator, but there is no evidence that anyone was promoted into that job from March 2003 until Plaintiff's employment with Martin-Marietta was terminated. (Doc. 21, Pl. Dep. at 222-23.)

Plaintiff argues that the job of Plant Operator was awarded to Mr. McMinn and Mr. Couch was placed in the position of operating a "dozer" during Mr. Tucker's employment at the quarry. (Doc. 24, p. 20.) Mr. McMinn was promoted to Plant Operator in February 2003, at least a month before Plaintiff ever expressed an interest in the job. Plaintiff cannot establish a *prima facie* case without showing that he was both qualified for the position

and that he applied for a promotion that was available at the time. *Denney,* 247 F.3d at 1183. The only evidence that Plaintiff has provided regarding the loader position is that he was being trained on operating a loader at the quarry. (Doc. 21, Pl. Dep. at 96-97.) He has not produced any evidence that he was qualified to be a Loader Operator or that he ever applied for a promotion to the position Loader Operator when such a position was a available. Therefore, Plaintiff has failed to establish a *prima facie* case regarding his claims of discrimination for failure to promote under Title VII and § 1981, and Defendant is entitled to summary judgment.

D.    Retaliatory Discharge.

Finally, Plaintiff alleges that he was discharged in retaliation for filing his first EEOC charge of discrimination. (Doc. 1, p. 3.) Defendant argues that it is entitled to summary judgment on this claim because Mr. Tucker can neither establish a *prima facie* case nor prove that Martin-Marietta's reasons for his discharge are pretextual. (Doc. 22, p. 27.)

To bring an action for retaliation under Title VII, a plaintiff must establish a *prima facie* case by demonstrating that: (1) he participated in an activity that is protected by Title VII; (2) he subsequently suffered adverse

employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Cooper*, 390 F.3d at 740; *Pipkens v. City Temple Terrace, Florida*, 267 F.3d 1197, 1201 (11th Cir. 2001); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, (11th Cir. 1997).[2]  A plaintiff who has filed charges of discrimination with the EEOC has engaged in statutorily protected activity.  *Rollins v. Fla. Dept. Of Law Enforcement,* 868 F.2d 397, 400 (11th Cir. 1989).

Defendant asserts that Mr. Tucker's *prima facie* case fails because he cannot prove that there was a causal connection between the filing of his EEOC charge and his subsequent termination.  (Doc. 22, p. 27.)  Mr. Tucker filed a second EEOC charge for discrimination after he was terminated based upon his belief that he was discharged because of his race.  (Doc. 21, Pl. Dep. at 262.)  During his deposition, and in his second EEOC charge, Plaintiff admitted that Martin-Marietta was unaware that he had filed his first charge at the time of his termination.  *Id*.  In fact, Martin-Marietta did not become aware of the first EEOC charge until eight days after Plaintiff's employment

---

[2]The Eleventh Circuit Court of Appeals has acknowledged that "whether the elements of Title VII and § 1981 retaliation claims are the same is an 'open question' in this Circuit."  *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1120 n.10 (11th Cir. 2001).  However, in their respective briefs, the parties employ substantially the same elements of a *prima facie* retaliation claim.  (Docs. 22, 24.)

was terminated.  (Doc. 21, Knizer Affidavit.)  For Plaintiff to establish a causal connection, he must show that "'the decision-makers were aware of the protected conduct' and 'that the protected activity and the adverse employment action were not wholly unrelated.'" *Menefee v. Montgomery County Bd. of Educ.,* 137 Fed. Appx. 232 (11th Cir. 2005) (quoting *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 590 (11th Cir. 2000)).  At a very minimum, Mr. Tucker must show that Martin-Marietta "was actually aware of the protected expression at the time it took adverse employment action." *Clover v. Total Sys. Serv's., Inc.,* 176 F.3d 1346, 1354 (11th Cir. 1999).

Plaintiff argues that the causal connection can be proven by the fact that he was terminated within a week of his filing of the charge of discrimination with the EEOC.  It is true that close temporal proximity between the employee's protected activity and the adverse employment action is generally sufficient to create a genuine issue of material fact.  *See Brungart v. BellSouth Telecommunications, Inc.,* 231 F.3d 791, 799 (11th Cir. 2000).  However, *Brungart* also held that "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there in unrebutted evidence that the [employer] did not have knowledge

that the employee engaged in protected conduct." *Id*. "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001). Plaintiff admitted that Martin-Marietta did not know about the EEOC charge when it terminated his employment. Because Plaintiff has failed to establish a *prima facie* case, summary judgment is due to be granted on Mr. Tucker's claim of retaliatory discharge under both Title VII and § 1981.

V.     Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted in all respects. A separate order in conformity with this opinion will be entered.

Done this <u>15th</u> day of <u>September 2005</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153